**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 2:17-cr-180-2 |
| | ) | |
| NIKIA PERKINS, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION**

**Mark R. Hornak, Chief United States District Judge**

Before the Court is Defendant Nikia Perkins' Motion for Release/Reduced Sentence pursuant to CARES and/or First Step Act ("Motion"). (ECF Nos. 1288, 1340.) Mr. Perkins is currently serving a one hundred and twenty (120) month sentence for conspiracy to possess with intent to distribute and distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl and heroin in violation of 21 U.S.C. § 846. (ECF No. 828.) His in-custody sentence is to be followed by five (5) years of supervised release. (*Id.*)

Mr. Perkins was previously incarcerated at FCI Lompoc. (ECF No. 1340.) However, according to the Bureau of Prisons ("BOP") records, Mr. Perkins is currently located at FCI Florence. *See* Bureau of Prisons Inmate Locator, *Federal Bureau of Prisons*, https://www.bop.gov/inmateloc/ (last visited July 19, 2022). In his Motion, Mr. Perkins argues there are four extraordinary and compelling reasons warranting release: 1) his serious medical conditions and the risk of contracting a severe case of COVID-19 as a result, 2) the poor conditions at FCI Lompoc while he was housed there, 3) the unduly harsh nature of his sentence, and 4) the

COVID-19 pandemic. (ECF No. 1340.) Mr. Perkins also argues that the § 3553(a) factors warrant release.

Based on the current record, the Court concludes that Mr. Perkins' Motion is properly before it. However, Mr. Perkins has not presented extraordinary and compelling reasons that warrant release. As a result, Defendant's Motion for Compassionate Release is DENIED without prejudice subject to its reassertion should circumstances warrant.

## I. BACKGROUND

On March 25, 2019, Mr. Perkins pleaded guilty to one count of conspiracy to possess with intent to distribute and distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl and heroin. Pursuant to 21 U.S.C. § 846 and 21 U.S.C. § 841(b)(1)(A)(vi), the minimum term of imprisonment was one hundred and twenty (120) months. The Court imposed a sentence of one hundred and twenty (120) months on July 24, 2019. As of the date of this Opinion, the BOP lists Mr. Perkins' release date as January 18, 2026. *See* Bureau of Prisons Inmate Locator, *Federal Bureau of Prisons*, https://www.bop.gov/inmateloc/ (last visited July 19, 2022). As noted above, Mr. Perkins is currently housed at FCI Florence. *Id.*

On January 3, 2022, Mr. Perkins, *pro se*, filed a Motion for Release/Reduced Sentence pursuant to CARES and/or First Step Act. (ECF No. 1288.) In his Motion, Mr. Perkins seeks compassionate release based on his underlying medical conditions, namely, diabetes, high blood pressure, prostate enlargement and severe post traumatic symptoms from excessive quarantine and lockdown confinements. (*Id.*) He also argues that at FCI Lompoc and as a result of COVID-19 lockdown protocol, he was transferred to various buildings that included "inhumane" conditions and was subjected to 24 hour lockdowns. (*Id.*) Mr. Perkins argues that he is scarred from this

experience and that the fact that he had to endure the allegedly poor conditions at FCI Lompoc also establish an independent basis for compassionate release. (*Id.*) Based on Mr. Perkins' request for such, the Court appointed counsel on January 11, 2022 and a counseled supplement was filed on May 2, 2022. (ECF No. 1340.) Mr. Perkins' counseled supplement adopted the claims made in his *pro se* Motion and additionally argued that COVID-19 itself is an extraordinary and compelling reason for release and that his sentence, though subject to and in compliance with a statutory minimum, was unduly harsh based on a consideration of the § 3553(a) factors. On June 7, 2022, the Government filed a response opposing Mr. Perkins's Motion and stating that Mr. Perkins has failed to properly exhaust some of his claims, Mr. Perkins has not established extraordinary and compelling reasons for release, and that the § 3553(a) factors do not support release. (ECF No. 1365.) Mr. Perkins filed a reply on June 21, 2022.

The Motion is now ripe for disposition.

## II. LEGAL STANDARD

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007); *see also Dillon v. United States*, 560 U.S. 817, 819 (2010). One such specific authorization is the First Step Act's amendment of 18 U.S.C. § 3582. As amended, that provision allows a court to modify a defendant's term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." § 3582(c)(1)(A)(i). In addition, the court must consider: (1) whether the defendant has exhausted the appropriate administrative remedies; (2) the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable; and (3) whether such a

reduction is consistent with applicable policy statements issued by the Sentencing Commission. § 3582(c)(1)(A).

## III. DISCUSSION

### A. Administrative Exhaustion

The Court must first determine whether Mr. Perkins has complied with § 3582(c)'s exhaustion requirement. Prior to petitioning a court for relief under § 3582(c), a defendant must first file an administrative request for compassionate release with the warden of their facility and then either: (1) fully exhaust the Bureau of Prison's ("BOP") administrative remedies; or (2) wait thirty (30) days from the date their administrative request was filed with the warden. The Third Circuit has confirmed that either of § 3582(c)(1)(A)'s options (acting independently of one another) are sufficient to satisfy the exhaustion requirement. *See United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020) (rejecting the argument that a defendant is required to completely exhaust the administrative remedy process if the warden denies a request within thirty (30) days of receiving it, primarily because "the statute states that the defendant may file the motion [before a district court] thirty days after the warden receives his request"). Administrative exhaustion is mandatory, and a court may not grant compassionate release if exhaustion has not occurred, even if the Government does not contest the defendant's asserted exhaustion. *United States v. Davidson*, No. 16-139-2, 2020 WL 4877255, at *5 & n.4 (W.D. Pa. Aug. 20, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).

However, to properly exhaust, a defendant's administrative request for release need not be a "mirror image" of her motion for compassionate release. Instead, as long as the record before the

court demonstrates that "the BOP [had] the first opportunity to consider" the key reasons for release "the purposes of exhaustion have been fulfilled." *Id.* at *13. Further, particularly when a defendant raises concerns regarding the deterioration of a medical condition that the BOP is aware of, the court need not mandate that the defendant restart the process of administrative exhaustion. *See United States v. Iezzi*, No. 2:17-CR-00157, 2021 WL 5832767, at *4 (W.D. Pa. Dec. 9, 2021) (*citing United States v. Smith*, 464 F. Supp. 3d 1009, 1017–18 (N.D. Iowa 2020)) ("Asking [the defendant] to restart his [compassionate release] process because of the COVID-19 pandemic would be tantamount to telling inmates that they must restart the process each time their condition deteriorates. That, clearly, is not the purpose of the statute.").

Here, the Court determines that Mr. Perkins has fully exhausted his asserted extraordinary and compelling reasons for release. Mr. Perkins submitted a request with the Warden at FCI Lompoc stating that he has "underlying medical conditions that meet the required criteria" for compassionate release and requesting consideration by the BOP of the COVID-19 pandemic and of the "undeniably inhumane and horrendous" conditions of confinement at the facility. (ECF No. 1340-1, at 1.) The Warden denied his request based on a "review of the documentation" Mr. Perkins provided and Mr. Perkins's "central file and medical records." (*Id.* at 2.)

In his *pro se* Motion, Mr. Perkins stated that his underlying medical conditions of diabetes, high blood pressure, prostate enlargement and severe post traumatic symptoms amount to extraordinary and compelling reasons for release. (ECF No. 1288.) In his counseled response, Mr. Perkins additionally avers that his obesity and chronic kidney disease present extraordinary and compelling reasons for release as these conditions all make him more vulnerable to contracting a fatal case of COVID-19. (ECF No. 1340.)

The Government argues that Mr. Perkins has exhausted only his medical conditions of obesity, chronic kidney disease/diabetes and prostate enlargement. With respect to the high blood pressure, the Government argues that Mr. Perkins has not properly exhausted because the excerpts from the medical records presented by Mr. Perkins' counseled motion do not demonstrate that he has high blood pressure. Accordingly, the Government argues that this claim is both unexhausted and unsupported. The Government further contends that since Mr. Perkins failed to make any reference to COVID-19 in his request for release to the Warden, the claim that COVID-19 is a "free-standing basis for compassionate release" or that his medical conditions in the context of COVID-19 is a basis for compassionate release raised in his counseled response has not been exhausted.

Because, as mentioned above, this Court has established that the Defendant's request to the Warden and the motion filed before the Court need not be a "mirror image" and a defendant need not present every medical condition in his request before the Warden in order to fully exhaust, particularly where the Warden reviewed the Defendant's BOP medical records in making its determination, the Court concludes that Mr. Perkins has fully exhausted his conditions for release. *United States v. Davidson*, No. 2:16-CR-00139-2, 2020 WL 4877255, at *13 (W.D. Pa. Aug. 20, 2020) ("Given that the fundamental premise of § 3582(c)(1)(A)'s exhaustion requirement is to give the BOP the first opportunity to consider [a defendant's] overall medical condition (including consideration of those concerns in the context of the COVID-19 pandemic), and because the record before the Court plainly demonstrates that such consideration in fact occurred by and within the BOP, the purposes of exhaustion have been fulfilled.")

The BOP specifically stated that it reviewed Mr. Perkins's medical records and it is plainly aware of the ongoing, global COVID-19 pandemic and all the risks associated with the pandemic. Further, though Mr. Perkins may not have demonstrated that he in fact has high blood pressure, as the Court discusses in more detail below, Mr. Perkins has not failed to exhaust this issue simply because he failed to specifically raise it in his request to the Warden, since he stated in his request that he has "underlying medical conditions" which by the Court's estimation encompasses all conditions, stated and unstated, that are present in his medical records.

Accordingly, the Court determines that the BOP has had more than thirty (30) days to consider Mr. Perkins stated reasons for release, including consideration of those claims in the context of the COVID-19 pandemic and as a result, Mr. Perkins has administratively exhausted. Thus, the Court will proceed to review of the merits of his Motion.

**B. "Extraordinary and Compelling" Reasons**

The Court must next determine whether Mr. Perkins has presented "extraordinary and compelling" circumstances, such that consideration of release from prison would be permitted by § 3582(c)(1)(A)(i). The Court determines that he has not.

Section 3582 does not define the phrase "extraordinary and compelling reasons." Instead, Congress delegated that task to the Sentencing Commission. *See* 28 U.S.C. § 994(t) (stating that the Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."). The Sentencing Commission defined "extraordinary and compelling" as it related to the BOP's discretion under the pre-First Step Act version of § 3582(c)(1)(A)(i) in a policy statement contained in § 1B1.13 of the U.S. Sentencing Guidelines Manual (the "Guidelines"), but

the Commission has not updated the policy statement since the First Step Act became law. *See United States v. Rodriguez*, 451 F. Supp. 3d 392, 396 (E.D. Pa. Apr. 1, 2020).

In *United States v. Andrews*, the Third Circuit explained that given the lack of an updated applicable Policy Statement defining "extraordinary and compelling," "the existing policy statement is not applicable—and not binding—for courts considering prisoner-initiated motions" for compassionate release—adopting the position that all but one other Courts of Appeals to address the issue have taken. 12 F.4th 255, 259 (3d Cir. 2021). However, "although the policy statement is no longer binding, it still sheds light on the meaning of extraordinary and compelling reasons." *Id.* at 260. This is because "Congress legislates against the backdrop of existing law," and thus, by "reenact[ing] the compassionate-release statute without any alterations to the phrase 'extraordinary and compelling reasons,'" Congress likely intended the phrase to retain the meaning that the Sentencing Commission gave it in its pre-First Step Act Policy Statement. *Id.* Thus, in reviewing this Motion, this Court does not use the provisions of U.S.S.G. § 1B1.13 and its Application Notes as "an ultimate binding authority" but uses it as a guide in its analysis.

Mr. Perkins alleges that there are four extraordinary and compelling reasons that warrant release: 1) his serious medical conditions and the risk of contracting a severe case of COVID-19, 2) the poor conditions at FCI Lompoc while he was serving there, 3) the unduly harsh nature of his sentence, and 4) the COVID-19 pandemic. (ECF No. 1340.) The Court will examine each in turn.

1. <u>Medical Conditions</u>

First, Mr. Perkins argues that he has a variety of health conditions that put him at high risk of contracting a severe and potentially fatal case of COVID-19 while incarcerated. (ECF No. 1340.) He states that he has obesity, diabetes, high blood pressure, an enlarged prostate, and chronic kidney

disease. (*Id.*) Mr. Perkins argues that these preexisting conditions make him particularly vulnerable to contracting a serious case of COVID-19. (*Id.*) The Government argues that Mr. Perkins has not demonstrated that an enlarged prostate is an extraordinary and compelling reason for release, and that his medical records reveal that his obesity and diabetes are mild and appear to be improving through treatment with medication. (ECF No. 1365.) Thus, according to the Government Mr. Perkins's medical situation on the whole does not establish an extraordinary and compelling reason for release.

While the Court acknowledges that Mr. Perkins suffers from some medical conditions that do increase the potential risk of contracting a severe case of COVID-19, it determines that these conditions do not rise to the level of "extraordinary and compelling," such that a sentence reduction is warranted at this time.

First, Mr. Perkins's medical records reflect that his "current" health problems consist of obesity, hyperlipidemia, disorder of the eyelid, mild chronic kidney disease, and an enlarged prostate. (ECF No. 1371-1 ("Sealed Medical Records").) Despite Mr. Perkins's averment that he has high blood pressure, his records do not reflect such, and by contrast, his blood pressure readings appear within the normal to low range. (*See e.g., id.* at 25 (reflecting blood pressure readings from March to November of 2021 all below 120/80).) With respect to Mr. Perkins's diabetes, his medical records reveal that it appears to be well treated with medication and as of November 2021, his diabetes was classified as "resolved." (*Id.*, at 30.) Further, Mr. Perkins's remaining medical conditions of obesity, hyperlipidemia and mild chronic kidney disease, while serious, each appear to be mild and adequately treated within the BOP setting. (*See e.g.*, *id.*, at 30 (demonstrating that Mr. Perkins's 10-year risk of heart disease or stroke based on his hyperlipidemia decreased from January

to March of 2021 and that his chronic kidney disease is classified as stage 2 and mild).); *see also United States v. Wright*, No. 10-CR-20185-01, 2020 WL 6382870, at *3 (E.D. Mich. Oct. 30, 2020), *reconsideration denied*, No. 10-CR-20185-1, 2020 WL 6799039 (E.D. Mich. Nov. 19, 2020) (considering a defendant who suffered from stage 1 chronic kidney disease and determining that he "failed to show an extraordinary and compelling reason for release.")

And Mr. Perkins's enlarged prostate is not a condition that increases his risk of contracting a severe case of COVID-19 or that classifies as a serious medical condition that "substantially diminishes" Mr. Perkins's ability to provide self-care in a BOP facility. U.S.S.G. § 1B1.13, cmt. n.(1)(A)(ii); *see also*, *United States v. Barnett*, No. CR 15-250, 2021 WL 796026, at *2 (W.D. Pa. Mar. 2, 2021) (considering the motion of a defendant who had an enlarged prostate and hyperlipidemia, *inter alia*, and finding that "[d]efendant has not sufficiently demonstrated that the Court should exercise its discretion to grant him compassionate release based on his medical ailments, which appear to be controlled with adequate treatment, the general risks posed by the COVID-19 pandemic and the spread of COVID-19 at the institution where he is housed."); Centers for Disease Control and Prevention, *Coronavirus Disease, People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (making no reference to an enlarged prostate as a medical condition that increases the likelihood of contracting a severe case of COVID-19).

Second, even if Mr. Perkins's medical conditions, when considered together, place him at a greater risk of contracting a severe case of COVID-19, the Court notes that Mr. Perkins is fully vaccinated against COVID-19, and therefore his risk of contracting a severe case of COVID-19 is substantially mitigated. (ECF No. 1371-1, at 35.); *see United States v. Singh*, 525 F. Supp. 3d 543,

547 (M.D. Pa. 2021) (considering the motion of a defendant who had a BMI of 33.4, type 2 diabetes, and hyperlipidemia, *inter alia*, and determining "that [Defendant's] recent vaccination mitigates his risk from COVID-19 to such an extent that COVID-19, in combination with [Defendant's] underlying conditions, no longer presents an extraordinary and compelling reason to grant compassionate release.").

Thus, at this time, Mr. Perkins's overall medical situation is not so severe that it reaches the level of extraordinary and compelling that is necessary to support release under § 3582(c)(1)(A)(i).

Accordingly, the Court determines that Mr. Perkins medical conditions alone do not amount to an extraordinary and compelling reason for a reduction in sentence.

2. Conditions at FCI Lompoc

Mr. Perkins next argues that the conditions of confinement at FCI Lompoc that he allegedly endured while housed at that facility amounts to a separate extraordinary and compelling reason for release. Mr. Perkins argues that the conditions were "so poor that it rises to the level of cruel and unusual punishment." (ECF No. 1340, at 8.) Though Mr. Perkins is no longer housed at FCI Lompoc, he argues that the fact that he was housed there at all and experienced these conditions establishes an extraordinary and compelling reason for release. (*Id.*) The Government argues that such an argument is not cognizable in a motion for compassionate release. (ECF No. 1365.)

The Court agrees with the Government that such a claim is generally not cognizable in motions for compassionate release. *See e.g.*, *United States v. Butler*, No. CR 16-54-RGA, 2020 WL 3207591, at *3 (D. Del. June 15, 2020) (stating that alleged violations of the Eighth Amendment "do[] not provide a basis for Defendant's compassionate release."). Further, since Mr. Perkins is no

longer housed at FCI Lompoc, any challenge to the conditions of his prior incarceration at the facility cannot be addressed by this Court in a motion for compassionate release and is not an extraordinary and compelling reason for release. *See United States v. Engles*, No. CR 19-132 (JDB), 2022 WL 1062937, at *4 (D.D.C. Apr. 8, 2022) (determining that "complaints about the facility's conditions" do not "warrant compassionate release" because poor conditions at a facility affect all inmates and compassionate release is "a safety valve designed to ameliorate extraordinary individual hardships caused by incarceration") (emphasis in original).

Thus, Mr. Perkins's complaint about the conditions of his prior confinement at a facility at which he no longer resides is not be an extraordinary and compelling reason for the Court to consider now in determining whether compassionate release of Mr. Perkins from FCI Florence is warranted at this time.

3. "Unduly Harsh" Sentence Based on a Statutory Mandatory Minimum

Mr. Perkins also argues as a general matter that his legally imposed sentence of 120-months, pursuant to a statutory minimum in his case, was unduly harsh given that his total criminal history score was zero and accordingly, established only a criminal history category of I. (ECF No. 1340, at 9.) To support his argument, Mr. Perkins reiterates portions of his background and circumstances growing up, which were included in his Presentence Investigation Report ("PSIR") and previously considered by this Court when it imposed his original sentence. He states that he has taken advantage of multiple BOP programs and has had no disciplinary actions taken against him, so far, while incarcerated. (*Id.* at 9–10.) The Government argues that a valid and legally imposed mandatory minimum sentence cannot amount to an extraordinary and compelling reason for release under § 3582 and that such a challenge is not properly raised in a motion for compassionate release.

The Court determines that this claim also fails under the relevant case law. The Third Circuit has specifically stated that the "duration of a lawfully imposed sentence does not create an extraordinary or compelling circumstance." *United States v. Andrews*, 12 F.4th 255, 260–61 (3d Cir. 2021), cert. denied, 142 S. Ct. 1446 (2022). In *Andrews*, the Third Circuit determined that nonretroactive changes to the mandatory minimums as a matter of law "could not be extraordinary and compelling reasons warranting sentence reduction." *Id.* Here, Mr. Perkins fails to point to any change to the mandatory minimum statutory sentence at issue in in his case, retroactive or nonretroactive, which could warrant reconsideration of his sentence. And even if he could, the Court determines that doing so would be improper in a motion for compassionate release.

First, the Court notes that not only was Mr. Perkins's sentence subject to and complied with a statutory minimum, but the Court also imposed the lowest sentence that could be imposed by law, *i.e.*, the 120-month mandatory minimum. Thus, in the Court's estimation, it was not "unduly harsh," in light of the required statutory minimum and the fact that Mr. Perkins's ultimate sentence was at the lowest end of his sentencing guidelines calculation of 120–135 months in custody. Second, even if the imposition of a legal but lengthy sentence could be an extraordinary and compelling reason for release, which as the Court determined it is not, the Court already considered all of Mr. Perkins's background history and characteristics in imposing the original sentence. While Mr. Perkins's post-incarceration conduct may be relevant to the next analytical step under § 3582 in considering the § 3553(a) factors, it is not germane to the Court's inquiry into whether Mr. Perkins's sentence was unduly harsh when it was originally imposed such that it amounts to an extraordinary and compelling reason for release now.

Consequently, the decision in *Andrews* forecloses the argument that a lawfully imposed sentence may amount to an "extraordinary and compelling" basis for the relief sought purely because it is lengthy and such is true here, where Mr. Perkins has failed to allege any new legal or factual basis for why the Court should reconsider the sentence it originally imposed. And in any event, such would not be appropriately raised in a motion for compassionate release.

4. COVID-19 Pandemic

Lastly, Mr. Perkins argues that the COVID-19 pandemic is itself an extraordinary and compelling reason for release. (ECF No. 1340, 10–11.) The Government argues that the Third Circuit has mandated that COVID-19 alone is not an extraordinary and compelling reason for relief.

Here, again the Court agrees with the Government that Third Circuit case law is clear that "the mere evidence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). As a result, this reason for release also fails to amount to an extraordinary and compelling reason under § 3582.

In sum, none of Mr. Perkins's stated reasons for release amount to an extraordinary and compelling reason for release. Further, the Court determines that two of the four stated reasons – the conditions of confinement Mr. Perkins encountered at FCI Lompoc while he was formerly housed there and his lawfully imposed sentence – cannot be considered in the Court's assessment of whether there are extraordinary and compelling reasons that warrant release. In other words, they do not move the needle in either direction. And since Mr. Perkins's general assertion that COVID-19 is an extraordinary and compelling reason for release, alone, cannot amount to an extraordinary and compelling reason, the Court is left to consider whether his asserted medical conditions in the context

of the COVID-19 pandemic rise to an extraordinary and compelling level such that release is warranted. As explained above, they do not.

### C. The § 3553(a) Factors

Since the Court concludes that no extraordinary and compelling reasons warranting a reduction in sentence exist in Mr. Perkins' present situation, the Court does not need to engage in a full analysis of the § 3553(a) factors.

However, the Court notes that even if it found that Mr. Perkins had established extraordinary and compelling reasons existed that warrant release, the § 3553(a) factors also weigh against release. Specifically, "in considering the section 3553(a) factors, [the Court] should assess whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence." *United States v. Bess*, 455 F. Supp. 3d 53, 66 (W.D.N.Y. Apr. 22, 2020) (citation omitted). The determination of "whether to reduce an eligible defendant's term of incarceration for compassionate release after considering the § 3553(a) factors is committed to the discretion of the [district court]." *United States v. Jones*, No. 12-000038, 2020 WL 3871084, at *4 (W.D. Pa. July 8, 2020) (citing *United States v. Pawlowski*, 967 F.3d 327 (3d Cir. June 26, 2020)). That discretion includes the district court's authority to consider the length of the defendant's original custodial sentence, including the portions served and remaining, when weighing the § 3553(a) factors. *Pawlowski*, 967 F.3d at 330–31.

Here, at least two factors heavily weigh against release: (1) the nature and circumstances of the offense and (2) the need for the sentence imposed to deter future criminal conduct and to protect the public from further crimes by the Defendant.

First, Mr. Perkins pleaded guilty to conspiracy to possess large amounts of fentanyl as part of a very substantial drug trafficking organization, which impacted large swaths of the community in the Western District of Pennsylvania and of which he was a primary actor. (*See* ECF No. 770, "PSIR" (applying an upward adjustment to the total offense level based on Mr. Perkins role as "an organizer, leader, manager, or supervisor.").) Mr. Perkins specifically admitted that at least 1.2 kilograms but up to 4 kilograms of fentanyl, a very large amount of a particularly potent and dangerous controlled substance which has ravaged the lives of many throughout the country, and specifically in the Western District of Pennsylvania, could be attributable to him. The seriousness of the crimes Mr. Perkins pleaded guilty to committing cannot be overstated and the sentence originally imposed by the Court, even in light of the considered history and characteristics of Mr. Perkins, including the unfortunate circumstances of his childhood (which the Court acknowledges involved conditions and situations that no child should be exposed to witnessing), was not greater than necessary to serve the purposes of sentencing based on the serious nature of the offense conduct. And the same remains unchanged now.

Additionally, while Mr. Perkins has served significant time in custody, he has served less than 75% of his 120-month sentence and his release date is listed as January 18, 2026. *See* Bureau of Prisons Inmate Locator, *Federal Bureau of Prisons*, https://www.bop.gov/inmateloc/ (last visited July 26, 2022). Releasing Mr. Perkins roughly forty one (41) months earlier than the end of the Court's originally imposed, and Congressionally-mandated, sentence would not be appropriate, nor would it properly serve the purposes of sentencing. Simply put, it would be a sentence less than sufficient to fulfill the purposes of sentencing in Mr. Perkins's specific case.

Accordingly, even if Mr. Perkins had established that extraordinary and compelling reasons would warrant release at this time, the Court notes that the § 3553(a) factors continue to counsel against release.

## IV. CONCLUSION

Although Mr. Perkins's Motion is properly before the Court, it does not present extraordinary and compelling reasons that would warrant a reduction in sentence at this time. Accordingly, and for the reasons stated, Mr. Perkins's Motion for Release/Reduced Sentence pursuant to CARES and/or First Step Act (ECF Nos. 1288, 1340) is **DENIED** without prejudice and subject to reassertion should circumstances warrant.

s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge

Dated: July 28, 2022
cc: All counsel of record